FILED

2018 JAN 22  PM 12: 44

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

Morgan Stanley,                              )
                                             )
                        Plaintiff,           )
                                             )     Case No.: 3:18CV141-J-34MCR
          vs.                                )
                                             )
Daniel J. Abel,                             )
                                             )
                        Defendant.           )
_____/

**PLAINTIFF'S COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF**

Plaintiff Morgan Stanley ("Morgan Stanley"), by and through its undersigned

counsel, sues Defendant Daniel J. Abel ("Abel"), an individual, for temporary and

preliminary injunctive and other emergency relief to preserve the status quo, and, in support

hereof, alleges:

**INTRODUCTION**

1.     This action arises from the willful and deliberate breach of non-solicitation

and non-disclosure agreements by Defendant Abel in his attempts, in violation of his express

contractual and statutory obligations, to misappropriate and convert Plaintiff's confidential

information and trade secrets relating to Plaintiff's clients with over an estimated $18 million

in combined assets for the benefit of himself and his own new firm, Abel Wealth

Management, LLC ("AWM") in Jacksonville, Florida.[1] Unless immediately enjoined by this

Court on an interim basis to preserve the status quo, Plaintiff will suffer irreparable harm in

the loss of customer relationships insofar as Defendant will continue to misappropriate

_____
[1] An action has been filed concurrently for Financial Industry Regulatory Authority ("FINRA") arbitration.

Plaintiff's confidential information, trade secrets, and property and solicit Plaintiff's clients with absolute impunity and cavalier disregard for his contractual and statutory obligations to Plaintiff. Not only will Plaintiff suffer irreparable harm without the injunctive relief sought, but the injury is so imminent that notice and a hearing on the application for preliminary injunction is impractical, if not impossible.

## PARTIES, JURISDICTION, AND VENUE

2. Plaintiff Morgan Stanley is a financial services company and a FINRA Member. Plaintiff is a full service securities firm engaged in the retail and institutional sale of securities and various other financial products and is based in New York City, New York. Plaintiff does business in Florida, including in St. John's County.

3. This court has personal jurisdiction over the Defendant, as Defendant is a resident of St. John's County, Florida. He was employed by Plaintiff from March 2014 until January 12, 2018, when he abruptly resigned under dishonest pretenses and started his own independent firm, Abel Wealth Management, LLC.

4. This Court has jurisdiction over this action because Morgan Stanley seeks equitable relief and damages in excess of $75,000, exclusive of interest and costs, as explained in more detail herein due to the fact that Defendant has not only enabled Morgan Stanley's clients to liquidate their accounts, but also solicited Morgan Stanley's clients to transfer more than $18 million in assets from Morgan Stanley to AWM.

5. Venue is proper in this Court because Morgan Stanley does business, Defendant resides and was employed by Morgan Stanley, and the acts giving rise to this action occurred in St. John's County, Florida.

2

## GENERAL ALLEGATIONS

6. Beginning in March 2014, Defendant became employed by Plaintiff. Defendant was initially employed as a Financial Advisor, however, after an unsuccessful transition, Abel became a member of the support staff. A Financial Advisor, Michelle Paul, took Abel under her wing as support staff and paid him above the market rate.

7. On January 12, 2018, Defendant abruptly resigned from Plaintiff and created his own independent, competing firm, AWM. Defendant's resignation was designed to allow him to unfairly compete. Defendant slid his resignation letter under his manager's office door when the manager was out of the office and such resignation was not found until after the holiday weekend. This allowed Defendant to wrongfully compete with Morgan Stanley in violation of his obligations while the firm was unaware that he had resigned.

8. Through the course of his employment with Plaintiff, Defendant was permitted significant contact with Plaintiff's clients and had permission to access Plaintiff's databases and access client information in order to service Plaintiff's clients. Upon his resignation, Defendant inappropriately abused his authority and violated his contractual agreements by taking and using client information for purposes other than servicing Plaintiff's clients on behalf of Plaintiff. When Defendant resigned, he absconded with various confidential information of Morgan Stanley and misappropriated the information to engage in a campaign of solicitation of Morgan Stanley clients.

### Morgan Stanley's Confidential Information and Trade Secrets

9. Plaintiff Morgan Stanley has expended considerable money, time, and resources to identify, service, and maintain clients and to secure confidential personal and

financial information derived from Morgan Stanley clients. This includes a significant expenditure of money to advertise Plaintiff's services in an effort to generate name recognition and goodwill. Plaintiff spends significant time and money in developing new leads on prospective clients and maintaining a database of potential clients and former clients who may return in the future. Plaintiff also compensates its employees to originate, cultivate, and maintain clients. A critical component of the continued success of Plaintiff is building and retaining relationships with clients, particularly high net worth clients.

10.     A central responsibility of Plaintiff in providing services to clients is safeguarding the confidentiality of the comprehensive personal and financial information provided to Plaintiff and its employees. As a result, all client information is held by Plaintiff in the strictest confidence, with safeguards designed to prevent any unauthorized disclosure of client information. Additionally, by nature of the customer and advisor relationship, Plaintiff's employees generally owe customers a fiduciary duty. Fiduciary accounts are protected under special rules of confidentiality and account information may not be shared without specific consent.

11.     In order to service clients and be in compliance with applicable laws, rules, and regulations, Plaintiff maintains extensive client records in hard copy form and in electronic databases. Upon opening an account with Plaintiff, clients provide Plaintiff with personal information, such as the client's full name, date of birth, social security or tax identification number, marital status, annual income, residential and business telephone numbers, and e-mail addresses that are not publicly known or readily ascertainable. Plaintiff's client records also contain confidential financial information regarding each client,

4

such as the client's bank account information, asset allocation, liquid and total net worth, and investment needs and objectives. The confidential client information may also include references to other professional advisors, such as attorneys and accountants, third-party service providers, data about future plans of the client, and information on the current services and products used by the client.

12.    To protect the confidential information, trade secrets, and property from being disclosed to any third parties, Plaintiff requires the use of passwords to access its computer systems and records, restricted access to its business premises, including requiring passcodes and keys, and implemented a number of contractual restrictions on the maintenance and use of confidential information, including the Morgan Stanley Wealth Management Joint Production Arrangement Policy ("JP Policy") and the Morgan Stanley Code of Conduct. These agreements expressly prohibit the solicitation of Morgan Stanley's clients and the disclosure of Morgan Stanley's confidential information to any third parties, and requires employees of Morgan Stanley to take measures to protect Morgan Stanley's information from unauthorized access.

### Agreements to Protect Confidential Information and Trade Secrets

#### Defendant's Employment Agreement

13.    On March 7, 2014, Defendant executed his Employment Agreement containing restrictions against taking confidential customer (including names and contact information) or Morgan Stanley information, restrictions against solicitation of Morgan Stanley customers, and agreed to the entering of an injunction in the event that he breached these obligations. Attached as **Exhibit 1**.

14.   The Employment Agreement states in Section 2:

2.3   You agree that, during the course of your employment with Morgan Stanley or otherwise, you will not remove Trade Secrets or other Company Records from the premises of Morgan Stanley in either original or copied form, except in the ordinary course of conducting business for, and subject to approval by, Morgan Stanley. You also agree that you will not use Trade Secrets or other Company Records for any purpose other than the purpose of conducting the business of Morgan Stanley. You further agree that: (a) your use of Trade Secrets and other Company Records will stop immediately upon the suspension or termination of your employment relationship with Morgan Stanley; (b) you will immediately deliver to Morgan Stanley, at the time of suspension or termination of your employment or at any other time upon Morgan Stanley's request, any Trade Secrets or other Company Records in your possession or control; and, (c) you will permit Morgan Stanley to inspect, prior to removal, any materials you intend to take from Morgan Stanley offices when your employment with Morgan Stanley is suspended or terminated. (EMPLOYEE INITIALS)

2.4   You agree that, both during and subsequent to your employment with Morgan Stanley, you will not disclose to any person or entity the contents, in whole or in part, of any Trade Secrets or Company Records, except in the ordinary course of conducting business for Morgan Stanley. (EMPLOYEE INITIALS)

2.5   You will not, at any time assert any claim of ownership or other property interest in any Trade Secrets or other Company Records. (EMPLOYEE INITIALS)

15.   The Employment Agreement states in Section 3:

3.   UNFAIR COMPETITION

3.1   You acknowledge and agree that the training, resources, goodwill and reputation of Morgan Stanley are material factors in your ability to develop and service Morgan Stanley's customers, and that all customers serviced by you on behalf of Morgan Stanley are customers of Morgan Stanley. (EMPLOYEE INITIALS)

3.2   For a period of one year following termination of your employment for any reason, you will not solicit or attempt to solicit, directly or indirectly, any of Morgan Stanley's customers who were serviced by you, or whose names became known to you, while in the employ of Morgan Stanley or as a result of your employment with Morgan Stanley, with respect to securities, commodities, financial futures, insurance, tax advantaged investments, mutual funds, or any other line of business in which Morgan Stanley or any of its affiliates is engaged. For purposes of this provision, the term "solicit" includes initiation of any contact with customers for the purpose of conducting business with or transferring accounts to any other person or firm that does business in any line of business in which Morgan Stanley or any of its affiliates is engaged. These restrictions will not apply to your solicitation of customers that occurs in California so long as such solicitation does not involve your use of Trade Secrets or Company Records. (EMPLOYEE INITIALS)

3.3   For a period of one year following termination of your employment for any reason, you will not, directly or indirectly, recruit or solicit any employee of Morgan Stanley for employment or other business relationship with any other organization that does business in securities, commodities, financial futures, insurance, tax advantaged investments, mutual funds, or any other line of business in which Morgan Stanley or any of its affiliates is engaged. (EMPLOYEE INITIALS)

6

16.     The Employment Agreement states in Section 4:

4.      **RIGHT TO INJUNCTION**

4.1     In the event you breach any of your obligations concerning Trade Secrets, Company Records, and other confidential information or "Unfair Competition" contained in paragraphs 2 or 3 of this Agreement, you agree that Morgan Stanley will be entitled to appropriate injunctive relief. You understand and agree that Morgan Stanley will suffer immediate and irreparable harm and that money damages will not be adequate to compensate Morgan Stanley or to protect and preserve the status quo pending arbitration (as provided for in paragraph 7 of this Agreement). Therefore, YOU CONSENT TO THE ISSUANCE OF A TEMPORARY RESTRAINING ORDER OR A PRELIMINARY OR PERMANENT INJUNCTION ordering:

(a)     that you immediately return to Morgan Stanley all Trade Secrets and Company Records, whether original, duplicated, computerized, handwritten, or in any other form whatsoever, and that you be enjoined and restrained from using or disclosing any information contained in such materials. _____ (EMPLOYEE INITIALS)

(b)     that, for a period of one year following the termination of your employment, you be enjoined and restrained from soliciting or attempting to solicit, directly or indirectly, any of Morgan Stanley's customers who were serviced by you, or whose names became known to you, while in the employ of Morgan Stanley, with respect to securities, commodities, financial futures, insurance, tax advantaged investments, mutual funds or any other line of business in which Morgan Stanley or any of its affiliates is engaged. _____ (EMPLOYEE INITIALS)

(c)     that, for a period of one year following termination of employment for any reason, you will not, directly or indirectly, recruit or solicit any employee of Morgan Stanley for employment or other business relationship with any other organization that does business in securities, commodities, financial futures, insurance, tax advantaged investments, mutual funds, or any other line of business in which Morgan Stanley or any of its affiliates is engaged. _____ (EMPLOYEE INITIALS)

4.2     You and Morgan Stanley have the right to apply to a court of competent jurisdiction for an injunction or other provisional relief in aid of arbitration, including upon the grounds set forth in California Code of Civil Procedure Section 1281.8 (where applicable). You agree that your or Morgan Stanley's application to any court for an injunction for other provisional relief will not constitute a waiver by you or Morgan Stanley of the right to arbitration as provided for in paragraph 7.1 of this Agreement, and that any hearing on the merits in such dispute shall be conducted in arbitration. If, after issuance of a temporary restraining order or preliminary injunction, the parties proceed to arbitration, you agree to consent to expedited hearing procedures for such arbitration. You further agree that any injunction or provisional order shall stay in full force and effect until a panel of arbitrators renders a full and final decision on the merits. _____ (EMPLOYEE INITIALS)

JP Policy & Non-Solicitation Provision

17.     On August 29, 2017, Defendant executed the JP Policy, which contains a non-

solicitation provision. Attached as **Exhibit 2**.The Non-Solicitation Provision states:

> [F]or a period of one (1) year following [Defendant's] termination of
> employment for any reason, [Defendant] will not to solicit or attempt to
> solicit, directly or indirectly, any of Morgan Stanley's customers who were
> serviced by [Defendant], or whose names became known to [Defendant],
> while in the employ of Morgan Stanley or as a result of [Defendant's]
> employment with Morgan Stanley, with respect to securities, commodities,
> financial futures, insurance, tax advantaged investments, mutual funds, or any
> other line of business in which Morgan Stanley or any of its affiliates is
> engaged. For purposes of this provision, the term "solicit" includes initiation
> of any contact with customers for the purpose of conducting business with or
> transferring accounts to any other person or firm that does business in any line
> of business in which Morgan Stanley or any of its affiliates is engaged.

18.     By signing the JP Policy, Defendant further agreed that "[i]n the event of a

breach of any of the restrictions contained or incorporated herein by reference, [Defendant]

agrees that [Morgan Stanley] will suffer immediate and irreparable harm, that money

damages will not be adequate to compensation (sic) [Morgan Stanley], and [Morgan Stanley]

will therefore be entitled to appropriate injunctive relief."

19.     Despite the fact that Defendant—prior to resignation—transitioned from being

a financial advisor to being a support staff member, he remains subject to this bona fide

agreement, including its restrictive covenants, because it was never revoked upon his

transition from financial advisor to support staff within the Morgan Stanley office. *See*

Affidavit of Albert S. Toto, ¶ 12, attached as **Exhibit 3**.

20.     It is essential to note that the JP Policy has a provision that the above

referenced "non-disclosure, confidentiality and non-solicit restrictions will survive

termination of the JP Arrangement." *See* JP Policy, at 3. While Defendant may argue that his

transition from a financial advisor to support staff might free him of his obligations under the JP Policy, the above provision dictates that he is still, in fact, subject to those covenants despite his transition.

Morgan Stanley Code of Conduct

21.     In the course of his employment with Morgan Stanley, Defendant also submitted to the provisions contained within the Morgan Stanley Code of Conduct. Among these provisions is the Obligation to Protect Confidential Information, which provides:

> You must protect all confidential information, regardless of its form or format. In particular, you must only access confidential information that you need and are authorized to see; transmit confidential information only to [Morgan Stanley] employees and agents with a legitimate business reason to know it and take reasonable measures to prevent unauthorized persons from obtaining confidential information you possess. Never forward confidential information to your personal email account or otherwise use your personal email to conduct Firm business.

> Your obligation to protect our confidential information continues even after your employment at Morgan Stanley ends.

**Defendant's Violations of His Agreements with Morgan Stanley**

22.     On or about January 12, 2018, Defendant submitted notice of his resignation in a manner designed to unfairly compete.

23.     In light of Defendant's resignation, Plaintiff's Information Technology Department conducted a forensic review of Defendant's access to and activity within Plaintiff's electronic databases and equipment, including but not limited to Abel's email activity, office and cell phone logs, office printing and downloading activity, and his calendar entries. This forensic review revealed that, despite the numerous contractual restrictions designed to prohibit any misuse or disclosure of Plaintiff's confidential information,

9

Defendant engaged in various and repeated activities to take Plaintiff's confidential information, store it outside of Plaintiff's servers and databases, and to use that information to solicit Plaintiff's customers. Defendant's conduct was in violation of not only his contractual obligations, but also his common-law duties to Plaintiff and/or Plaintiff's clients.

24.     Abel also engaged in additional conduct that indicates his plans to resign from Morgan Stanley and retain Morgan Stanley's clients. Upon information and belief, in the days leading up to his resignation, Abel contacted Morgan Stanley clients by phone. At least one of these clients confirmed almost immediately following Abel's resignation that the client had decided to transfer their accounts from Morgan Stanley to Abel's new independent firm, AWM. *Id.*, ¶ 11. Moreover, another Morgan Stanley client relayed to his financial advisor, Michelle Paul, that Abel called him on January 12, 2018 and informed the client, D. D. that he (Abel) was leaving Morgan Stanley and opening his own new firm. *Id.*, ¶¶ 6 and 11.

25.     Upon information and belief, Defendant has, both prior to and since his resignation, used confidential contact information for Morgan Stanley's clients to contact and solicit Morgan Stanley's clients. *Id.*, ¶ 4. Furthermore, Defendant has sent out a notification to his connections—several of whom are Morgan Stanley clients—on the social networking site, LinkedIn.com, asserting that he was starting his own firm. This conduct violates the Non-Solicitation Provision contained in the JP Policy, which prohibits Defendant from soliciting any of Plaintiff's clients. *Id.*, ¶ 12.

26.     Upon learning of these violations, Plaintiff sent Defendant multiple letters demanding that he provide written assurance of his intention to comply with his contractual

10

obligations. **Exhibits 4-5**. Defendant failed to meaningfully respond to the letters thus forcing Morgan Stanley to appeal to the Court for relief.

**COUNT I: BREACH OF CONTRACT**

27.     Plaintiff realleges and incorporates by reference the allegations set forth above in Paragraphs 1 through 26 as if fully set forth herein.

28.     Through the activities engaged in prior to and after his resignation, Defendant violated numerous contractual agreements he had with Plaintiff, including but not limited to the Employment Agreement, JP Policy and the Morgan Stanley Code of Conduct.

29.     In consideration for these contractual agreements, Plaintiff provided Defendant with, among other things, employment, continued employment, training and support, licensing assistance, and compensation.

30.     Plaintiff has fulfilled all of its duties and obligations under the contractual agreements referenced herein.

31.     As a direct and proximate result and consequence of the foregoing breaches of Defendant's contractual obligations, Plaintiff has suffered and will continue to suffer irreparable harm and loss, and sustained damages, including but not limited to loss of confidentiality of Plaintiff's clients private information, loss of valuable business relationships, loss of opportunity of obtaining and/or retaining valuable business relationships, loss of profits and future profits, loss of reputation, and loss of good will.

32.     Defendant's intentional, willful, malicious, and wrongful conduct, unless and until enjoined and restrained by order of this Court, will cause severe and irreparable injury

to Plaintiff's reputation, goodwill, and business for which Plaintiff has no adequate remedy at law, which Defendant affirmatively agreed to in the JP Policy.

## COUNT II: MISAPPROPRIATION OF TRADE SECRETS

33.  Plaintiff realleges and incorporates by reference the allegations set forth above in Paragraphs 1 through 26 as if fully set forth herein.

34.  Plaintiff's trade secret confidential information, including specifically the list containing confidential contact information for Plaintiff's clients, compiled using Plaintiffs' databases and equipment, that contain client names, addresses, phone numbers, email addresses, and other personal and financial information on the clients, are owned by Plaintiff and are invaluable assets belonging to Plaintiff. Plaintiff's trade secret information has independent economic value, actual and potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure and use. Plaintiff's trade secret customer information is the product of substantial expenditures of time, money, and effort invested by Plaintiff.

35.  Under the Florida Uniform Trade Secrets Act ("FUTSA"), the elements of a misappropriation claim include: (1) the plaintiff possessed secret information and took reasonable steps to protect its secrecy, and (2) the secret was misappropriated, either by one who knew or had reason to know that the secret was improperly obtained or by one who used improper means to obtain it. Fla. Stat. § 688.004. FUTSA defines "improper means" to specifically include misrepresentation or "breach or inducement of a breach of a duty to maintain secrecy . . . ." Fla. Stat. § 688.002(1).

12

36.     As described above, Plaintiff has taken reasonable steps to protect the secrecy of its trade secrets by, among other things, requiring the use of passwords to access its computer systems and records, restricting access to its business premises, including requiring passcodes and keys, and implementing a number of contractual restrictions on the maintenance and use of confidential information. Defendant's actions have breached the confidences of clients serviced by Plaintiff's business, in contravention of the duties and responsibilities owed to the clients.

37.     By taking Plaintiff's confidential information in anticipation of his resignation and for his own personal gain, Defendant misappropriated Plaintiff's trade secrets.

38.     Plaintiff's customer information and lists are protected under Florida law by the FUTSA as a trade secret and Defendant's misappropriation of the information violates the statute. *See* Fla. Stat. § 688.004.

39.     As a direct and proximate result and consequence of the foregoing, Plaintiff has suffered and will continue to suffer irreparable harm and loss, and sustained damages, including but not limited to loss of confidentiality of Plaintiff's clients' private information, loss of valuable business relationships, loss of opportunity of obtaining and/or retaining valuable business relationships, loss of profits and future profits, loss of reputation, and loss of good will.

40.     Defendant's wrongful conduct, unless and until enjoined and restrained by order of this Court, will cause severe and irreparable injury to Plaintiff's reputation, goodwill, and business for which Plaintiff has no adequate remedy at law.

## COUNT III: TORTIOUS INTERFERENCE

41.     Plaintiff realleges and incorporates by reference the allegations set forth above in Paragraphs 1 through 26 as if fully set forth herein.

42.     To state a claim for tortious interference, a plaintiff must show "(1) the existence of a business relationship under which the plaintiff has legal rights; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with that relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the business relationship." *Bortell v. White Mountains Ins. Group, Ltd.*, 2 So. 3d 1041, 1048 (Fla. 4th DCA 2009).

43.     Plaintiff had business relationships with the clients referenced in the confidential information misappropriated by Defendant. Plaintiff had legal rights to these relationships, as evidenced by the Non-Solicitation Provision, which prohibited Defendant from soliciting any of Plaintiff's clients.

44.     Through his employment with Plaintiff and signing the JP Policy, Defendant knew of Plaintiff's relationship with the clients.

45.     By misappropriating Plaintiff's confidential information in anticipation of his resignation, Defendant intentionally and unjustifiably interfered with Plaintiff's client relationships.

46.     As a direct and proximate result and consequence of the foregoing, Plaintiff has suffered and will continue to suffer irreparable harm and loss, and sustained damages, including but not limited to loss of confidentiality of Plaintiff's clients' private information, loss of valuable business relationships, loss of opportunity of obtaining and/or retaining

14

valuable business relationships, loss of profits and future profits, loss of reputation, and loss of good will.

47.     Defendant's wrongful conduct, unless and until enjoined and restrained by order of this Court, will cause severe and irreparable injury to Plaintiff's reputation, goodwill, and business for which Plaintiff has no adequate remedy at law.

## COUNT IV: VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT ("FDUTPA")

48.     Plaintiff realleges and incorporates by reference the allegations set forth above in Paragraphs 1 through 26 as if fully set forth herein.

49.     Unfair methods of competition are unlawful. F.S. § 501.201, *et seq.*

50.     There are "three elements that are required to be alleged to establish a claim pursuant to the FDUTPA: 1) a deceptive act or unfair practice; 2) causation; and 3) actual damages." *KC Leisure, Inc. v. Haber*, 972 So.2d 1069, 1073 (Fla. 5th DCA 2008).

51.     "An unfair practice [. . .] has been defined as one that that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Samuels v. King Motor Co. of Fort Lauderdale*, 782 So.2d 489, 499 (Fla. 5th DCA 2001) (citing *Spiegel, Inc. v. Fed. Trade Comm'n*, 540 F.2d 287, 293 (7th Cir. 1976) (internal quotation marks omitted).

52.     Defendant, by and through his various breaches of contract, breach of his duty of loyalty to Morgan Stanley, and misappropriation of trade secrets for his own benefit in violation of contractual obligations has engaged in deceptive and unfair practices.

53.    As a direct and proximate result and consequence of the foregoing, Plaintiff has suffered and will continue to suffer irreparable harm and loss, and sustained damages, including but not limited to loss of confidentiality of Plaintiff's clients' private information, loss of valuable business relationships, loss of opportunity of obtaining and/or retaining valuable business relationships, loss of profits and future profits, loss of reputation, and loss of good will.

54.    Defendant's wrongful conduct, unless and until enjoined and restrained by order of this Court, will cause severe and irreparable injury to Plaintiff's reputation, goodwill, and business for which Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Morgan Stanley respectfully requests this Court enter temporary and preliminary injunctive relief and award damages:

A. Prohibiting Abel (and all others acting in concert with him), for one (1) year from the date of his termination of employment, from directly or indirectly soliciting or contacting customers of Morgan Stanley;

B. Prohibiting Abel (and all others acting in concert with him), from disclosing or using Morgan Stanley's Trade Secrets and other confidential, proprietary information other than for the benefit of Morgan Stanley;

C. Directing Abel (and all others acting in concert with him) to return to Morgan Stanley all Trade Secrets and other confidential, proprietary information in their possession, custody, or control;

D. Award compensatory and other damages to Plaintiff attributable to Defendant's wrongful acts; and

E. Award the Plaintiff such other and further relief as this Court deems just and proper.

Dated: January 22, 2018

Respectfully Submitted,

By: _/s/ Michael S. Taaffe___
       Michael S. Taaffe, Esq.
       Fla. Bar No. 490318
       Michael D. Bressan, Esq.
       Fla. Bar No. 0011092
       SHUMAKER, LOOP & KENDRICK, LLP
       240 South Pineapple Avenue
       Post Office Box 49948
       Sarasota, Florida 34230-6948
       Tel: (941) 366-6660;
       Fax: (941) 366-3999
       mtaaffe@slk-law.com
       mbressan@slk-law.com
       *Trial Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system. I further certify that I served the foregoing document to the following:

Ronald Paul Angerer, II, Esq.
Law Offices of Archibald J. Thomas, III, PA
4651 Salisbury Road, #255
Jacksonville, FL 32256
(904) 674-2222
rpangerer@gmail.com

Daniel J. Abel
157 Summerfield Drive
Ponte Vedra Beach, FL 32802
abeldan@comcast.net

this 22[th] day of January, 2018.

By:  /s/ Michael S. Taaffe
      Michael S. Taaffe, Esq.
      Fla. Bar No. 490318
      Michael D. Bressan, Esq.
      Fla. Bar No. 0011092
      SHUMAKER, LOOP & KENDRICK, LLP
      240 South Pineapple Avenue
      Post Office Box 49948
      Sarasota, Florida 34230-6948
      Tel: (941) 366-6660;
      Fax: (941) 366-3999
      mtaaffe@slk-law.com
      mbressan@slk-law.com
      *Trial Counsel for Plaintiff*