UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MORGAN STANLEY SMITH BARNEY,
LLC,

                Plaintiff,

vs.                              Case No. 3:18-cv-00141-J-34MCR

DANIEL J. ABEL,

                Defendant.
_____/

## **TEMPORARY RESTRAINING ORDER**

**THIS CAUSE** is before the Court on Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction and Incorporated Memorandum of Law in Support Thereof (Emergency Motion, Doc. 2), filed January 22, 2018. On January 22, 2018, at 5:19 p.m., Plaintiff Morgan Stanley Smith Barney, LLC, (Morgan Stanley) filed its Amended Complaint for Injunctive and Other Relief (Amended Complaint, Doc. 6). In the Emergency Motion Morgan Stanley seeks a temporary restraining order and preliminary injunction precluding Defendant Daniel J. Abel (Abel), and anyone acting in concert with him, from soliciting Morgan Stanley's customers. Morgan Stanley further seeks an order directing Abel to return its confidential information. Emergency Motion at 1.

In support of its Emergency Motion, Morgan Stanley alleges that Abel, a former employee of the company, is breaching non-solicitation and non-disclosure agreements between himself and Morgan Stanley and is seeking to "misappropriate and convert

Plaintiff's confidential information and trade secrets relating to Plaintiff's clients with over an estimated $18 million in combined assets for the benefit of himself and his own new firm, Abel Wealth Management, LLC ("AWM") in Jacksonville FL." Amended Complaint at ¶ 1.

Beginning in March 2014, Abel was initially employed by Morgan Stanley as a financial planner. Id. at ¶ 6. However, he eventually transitioned from that position to be part of the financial planning support staff. Id. In both roles Morgan Stanley asserts Abel had significant contact with Morgan Stanley clients "and had permission to access [Morgan Stanley's] databases and access client information in order to service [Morgan Stanley's] clients." Id. at ¶ 8. Morgan Stanley further asserts that it has "expended considerable money, time, and resources to identify, service, and maintain clients and to secure confidential personal and financial information derived from Morgan Stanley clients." Id. at ¶ 9. Doing so, Morgan Stanley deems it a "central responsibility" to safeguard "the confidentiality of the comprehensive personal and financial information provided to [Morgan Stanley] and its employees" by its clients. Id. at 10. As such, Morgan Stanley contends that its client information is held "in the strictest confidence, with safeguards designed to prevent any unauthorized disclosure of client information." Id.

When Abel joined Morgan Stanley, he entered into an Employment Agreement which contains "restrictions against taking confidential customer (including names and contact information) or Morgan Stanley information, restrictions against solicitation of Morgan Stanley customers, and agreed to the entering of an injunction in the event that he breached these obligations." Id. at ¶ 13. Likewise, in December of 2015, Abel

executed the Morgan Stanley Wealth Management Joint Production Arrangement Policy ("JP Policy") which includes a non-solicitation provision and further directs that "[i]n the event of a breach of any of the restrictions contained or incorporated herein, [Abel] agrees that [Morgan Stanley] will suffer immediate and irreparable harm, that money damages will not be adequate to compensation (sic) [Morgan Stanley], and [Morgan Stanley] will therefore be entitled to appropriate injunctive relief." Id. at ¶¶ 12, 17; Exhibit 2 at 5 (JP Policy).[1] The JP Policy also provides that its "non-disclosure, confidentiality and non-solicit restrictions will survive termination of the JP Arrangement." Id. at ¶ 20. Finally, Morgan Stanley asserts that as a Morgan Stanley employee, Abel was subject to the Morgan Stanley Code of Conduct. Within the applicable Code of Conduct is a provision obligating employees to protect client and firm confidential information, during as well as after their employment at Morgan Stanley. Id. at ¶ 21.

Morgan Stanley alleges that on or about January 12, 2018, Abel submitted a letter of resignation by slipping it under the door of his supervisor, Albert S. Toto III, while Toto was out of town for a long weekend. Amended Complaint, Attach. 3 at ¶ 8 (Toto Declaration). Hence, it was not until Tuesday, January 16, 2018, that any manager at Morgan Stanley became aware of Abel's resignation. Id. Morgan Stanley asserts that in the interim, and perhaps even prior to his departure from Morgan Stanley, Abel engaged in acts which violated the terms of his Employment Agreement, the JP Policy, and Morgan Stanley's Code of Conduct. Amended Complaint at ¶¶ 23-25; Toto Declaration at ¶¶ 8-

---

[1] In Morgan Stanley's Amended Complaint, it states that on August 29, 2017, Abel executed the JP Policy. Amended Complaint at ¶ 17. However, Exhibit 2 of the Amended Complaint, which is a copy of Abel's JP Policy with Morgan Stanley, was executed on December 8, 2015.

11; Supplemental Declaration of Albert S. Toto III (Doc. 4-1, Toto Supplemental Declaration) at ¶¶ 5-11.

In particular, Morgan Stanley alleges in its Amended Complaint and supporting declarations that "despite the numerous contractual restrictions designed to prohibit any misuse or disclosure of Plaintiff's confidential information, [Abel] engaged in various and repeated activities to take Plaintiff's confidential information, store it outside of Plaintiff's servers and databases, and use that information to solicit Plaintiff's customers." Amended Complaint at ¶ 23. In the days preceding his resignation, Morgan Stanley contends that Abel contacted Morgan Stanley clients by phone, one of whom decided to transfer his accounts to Abel's new firm. Id. at ¶ 24. Morgan Stanley asserts that Abel has contacted at least five other Morgan Stanley clients to solicit their business. Id. at ¶¶ 24-25; Toto Declaration at ¶ 11; Toto Supplemental Declaration at ¶¶ 5-8. Similarly, Morgan Stanley alleges that Abel "sent out a notification to his connections – several of whom are Morgan Stanley clients – on the social networking site, LinkedIn.com, asserting that he was starting his own firm." Amended Complaint at ¶ 25. Morgan Stanley contends that "[t]his conduct violates the Non-Solicitation Provision contained in the JP Policy, which prohibits Defendant from soliciting any of Plaintiff's clients." Id.

Upon learning of Abel's resignation from Morgan Stanley on January 16, 2018, and of his alleged activities in violation of his Employment Agreement, the JP Policy, and the Morgan Stanley Code of Conduct, Morgan Stanley sent two separate letters to Abel, seeking clarification as to his actions, requesting that he return any and all Morgan Stanley confidential information, and demanding that he cease and desist from violating

his obligations to the firm. Amended Complaint, Attach. 4 (January 17, 2018 letter); Attach. 5 (January 18, 2018 letter). According to Morgan Stanley, Abel responded through an attorney, but "failed to return any customer lists and other documents belonging to Morgan Stanley and refused to certify compliance with restrictive covenants going forward." Emergency Motion, Attach. 1 at ¶ 4 (Declaration of Michael D. Bressan). Consequently, Morgan Stanley filed its Emergency Motion before this Court seeking temporary and preliminary injunctive relief.

Having considered the Amended Complaint, Emergency Motion, and declarations filed in support thereof, and in accordance with Rule 65(b), Federal Rules of Civil Procedure (Rule(s)), and Local Rule 4.05, United States District Court, Middle District of Florida (Local Rule(s)),[2] the Court makes the following findings for purposes of resolving this Motion:[3]

1. Morgan Stanley is a Delaware corporation with its principal place of business in either New York or New Jersey. Amended Complaint at ¶ 2. Defendant Abel is an individual who is a citizen of Florida. The amount in controversy is in excess of $75,000. Accordingly, this Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332.

2. This Court has personal jurisdiction over Abel because he resides in the state of Florida, is engaged in business in the state, and is alleged to have committed

---

[2] In the Emergency Motion, Morgan Stanley cites to the Florida Rules of Civil Procedure which are inapplicable. However, in its proposed order, Morgan Stanley correctly relies on the Rules and Local Rules.
[3] These findings are based solely on Morgan Stanley's pleadings and declarations. As such, they are subject to change once Abel has appeared and presented his version of these events.

tortious acts in the state. See Morrison Management Specialists, Inc. v. LVDC, Inc., No. 8:11-cv-660-T-30TGW, 2011 WL 2446701, *1 (M.D. Fla. June 15, 2011).

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2), in that the matter is founded solely on diversity jurisdiction and a substantial part of the events or omissions giving rise to the claim are alleged to have occurred in this district.

4. It is within the Court's discretion to grant injunctive relief. All Care Nursing Serv. v. Bethesda Memorial Hosp., Inc., 887 F.2d 1535, 1537 (11th Cir. 1989). In order for a court to grant injunctive relief, a movant must show: (1) the movant has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered if the injunction does not issue; (3) "the threatened injury to the movant outweighs whatever damage the proposed injunction will cause the opposing party;" and (4) that the proposed injunction would not be adverse to the public interest. Id.; Davidoff & CIE, S.A. v. PLD Int'l Corp., 263 F.3d 1297, 1300 (11th Cir. 2001); Am. Red Cross v. Palm Beach Blood Bank, Inc., 143 F.3d 1407, 1410 (11th Cir. 1998).

5. Morgan Stanley asserts claims for breach of contract, misappropriation of trade secrets, tortious interference with business relationships, and deceptive and unfair trade practices. See Amended Complaint at 11, 12, 14, 15. In Florida, a breach of contract action requires the following three elements: a valid contract, material breach, and damages. Sanderson v. Zurich American Ins. Co., No. 8:09-cv-1755-T-23AEP, 2009 WL 4899403, *2 (M.D. Fla. Dec. 11, 2009) (quoting Friedman v. New York Life Ins. Co., 985 So. 2d 56, 58 (Fla. 4th Dist. Ct. App. 2008). With

respect to its claim for trade secret misappropriation,[4] Morgan Stanley must establish the following: "(1) that the plaintiff possessed secret information and took reasonable steps to protect its secrecy and (2) that the secret it possessed was misappropriated." H2Ocean, Inc. v. Schmitt, No. 3:05cv387/RV/EMT, 2006 WL 1835974, at *3 (N.D. Fla. June 30, 2006); see also Border Collie Rescue, Inc. v. Ryan, 418 F. Supp. 2d 1330, 1338 (M.D. Fla. 2006); Fla. Stat. §§ 688.002-.003. "Misappropriation" means the:

> Disclosure or use of a trade secret of another without express or implied consent by a person who: . . . 2. At the time of disclosure or use, knew or had reason to know that her or his knowledge of the trade secret was: . . . b. Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use.

See Fla. Stat. § 688.002(2)(b). Additionally, under Florida law

> [t]he elements of tortious interference with a business relationship are "(1) the existence of a business relationship . . . (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship."

See Ethan Allen, Inc. v. Georgetown Manor, Inc., 647 So. 2d 812, 814 (Fla. 1994) (quoting Tamiami Trail Tours, Inc. v. Cotton, 463 So. 2d 1126, 1127 (Fla. 1985)). Finally, to state a claim under Florida's Deceptive and Unfair Trade Practices Act ("FDUPTA"), a plaintiff must establish a deceptive act or unfair practice, causation, and actual damages. See KC Leisure, Inc. v. Haber, 972 So. 2d 1069, 1073 (Fla. 5th Dist. Ct. App. 2008). Based on the allegations in the Amended Complaint, and

---

[4] Florida law provides that "[a]ctual or threatened misappropriation may be enjoined." See Fla. Stat. § 688.003.

as verified by the declarations submitted in support of the Amended Complaint, the Court finds that Morgan Stanley has established a substantial likelihood of success on the merits of these claims.[5]

6. Morgan Stanley has sufficiently alleged that Abel's disclosure and use of its confidential client information or trade secrets would cause immediate and irreparable harm to Morgan Stanley's business relationships. Notably, under Florida law, a court may presume irreparable injury in cases involving tortious interference with business relationships and misappropriation of trade secrets. See Se. Mech. Servs. v. Brody, No. 8:08-CV-1151-T-30EAJ, 2008 WL 4613046, at *15 (M.D. Fla. Oct. 15, 2008); see also Dotolo v. Schouten, 426 So. 2d 1013, 1015 (Fla. 2d Dist. Ct. App. 1983). Regardless, the Court finds that Morgan Stanley has set forth sufficient facts suggesting that Abel has already disclosed and used confidential company information, and that Morgan Stanley would not be able to "undisclose" or recover that information. As such, the status quo between Morgan Stanley and certain of its customers would be lost forever. See Pharmerica, Inc. v. Arledge, No. 8:07-cv-486-T-26MAP, 2007 WL 865510, at *8 (M.D. Fla. Mar. 21, 2007). Based on Morgan Stanley's allegations and supporting declarations, it appears that Abel has solicited at least one customer from Morgan Stanley and to his new firm, and has contacted several others. Florida law

---

[5] Consistent with temporary restraining order practice, this finding is based solely on Morgan Stanley's Amended Complaint and declarations and is made for the purpose of resolving the Emergency Motion only. This conclusion does not foreclose the argument at the hearing on the motion for preliminary injunction that Morgan Stanley cannot establish a substantial likelihood of success on the merits.

recognizes that "[t]he loss of customers and good will is an irreparable injury and is difficult to measure." See Brody, 2008 WL 4613046, at *15.

7. Morgan Stanley asserts that because Abel allegedly has already used Morgan Stanley's confidential customer information to solicit current Morgan Stanley clients to join his independent firm, Morgan Stanley's "injury is so imminent that notice and a hearing on the application for preliminary injunction is impractical, if not impossible." Emergency Motion at 2. Notably, based on Morgan Stanley's filings, it appears the parties have engaged in communications in which Morgan Stanley has twice requested that Abel "cease and desist." Amended Complaint, Attach. 4-5. Moreover, on January 22, 2018, at 7:30 p.m., Morgan Stanley personally served Abel with process as well as Plaintiff's Complaint for Injunctive and Other Relief with Exhibits, Plaintiff's Emergency Motion for Temporary Restraining Order and Incorporated Memorandum of Law in Support Thereof, Declaration of Michael D. Bressan, Proposed Injunction Order, and Civil Cover Sheet. See Return of Service (Doc. 8) filed January 23, 2018. As such, Abel has notice of Morgan Stanley's request for injunctive relief and its attempts to have him refrain from his current alleged activities. In light of Abel's alleged solicitation of Morgan Stanley clients, the Court is satisfied that a hearing in accordance with Rules 4 and 65 of the Federal Rules of Civil Procedure, as well as the Court's Local Rules, should not be required prior to the issuance of this temporary restraining order as it is impossible or impractical due to the imminent threat of irreparable injury.

8. On the limited record here, the Court finds that the threatened injury to Morgan Stanley, if this request is not granted, outweighs any potential damage this limited relief would cause to Abel. Indeed, the Court can discern no significant harm to Abel that would result from the issuance of this injunction, particularly given its short duration.

9. Upon review, the Court determines that the entry of a temporary restraining order in this case would serve the public's interest in protecting legitimate businesses from the misappropriation of confidential information and resources, as well as promote the protection of contractual rights. See Moon v. Medical Technology Assocs., Inc., No. 8:13-cv-2782-EAK-EAJ, 2014 WL 1092291, *3 (M.D. Fla. March 19, 2014) ("Public interest favors the protection and enforcement of contractual rights . . . ."); Brody, 2008 WL 4613046, at *16 ("a preliminary injunction would affirmatively serve the public interest by protecting business from misappropriation of confidential information and resources."); Pharmerica, 2007 WL 865510, at *9 ("[A]n injunction against [defendant] is appropriate . . . [because] it protects the advancement of honest business enterprises and the economic well-being of the nation as a whole." (internal quotations omitted)).

10. In light of the foregoing, the Court concludes that Plaintiff has satisfied the requirements of Rule 65(b) as well as Local Rule 4.05.

Therefore, the undersigned finds that a Temporary Restraining Order should issue to preserve the status quo. In issuing the Temporary Restraining Order, the Court understands that Abel has not yet been given an opportunity to be heard and emphasizes

that it is not making a final decision on any request for preliminary injunctive relief. However, the Court is convinced that issuing the Temporary Restraining Order until a full hearing can be held on Morgan Stanley's request for preliminary injunctive relief is the lawful and proper action. Accordingly, it is

**ORDERED**:

1. Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction and Incorporated Memorandum of Law in Support Thereof (Doc. 2) is **GRANTED**, in part.

    a. Plaintiff's Emergency Motion is **GRANTED** to the extent that the Court enters a Temporary Restraining Order set forth below.

    b. In all other respects, Plaintiff's Emergency Motion is **TAKEN UNDER ADVISEMENT**.

2. Defendant Daniel J. Abel, and all persons in active concert or participation with him, who receive actual notice of this Order, are enjoined and restrained from doing any of the following:

    a. Soliciting the business of any customers of Morgan Stanley serviced by Defendant or whose names became known to Defendant while in the employ of Morgan Stanley or as a result of Defendant's employment with Morgan Stanley or initiating any contact with such customers of Morgan Stanley for the purpose of conducting business with or transferring accounts to any other person or firm that does business in any line of business in

which Morgan Stanley or any of its affiliates is engaged (excluding members of Defendant's family); and

b. Using, disclosing or transmitting for any purpose, any records, documents or information relating in any way to Morgan Stanley's customers, including, but not limited to, any list of Morgan Stanley customer names and/or customer contact information, business or marketing strategies, or business operations of Morgan Stanley, whether in original, copied, computerized, handwritten or any other form (hereafter the "records and Information").

3. This Temporary Restraining Order is not a decision on the ultimate merits of this dispute and is without prejudice to the rights, remedies, claims or defenses of any party hereto, and no party hereto shall argue that this Temporary Restraining Order precludes the making of any substantive argument at the FINRA merits hearing.

4. Morgan Stanley shall post good and sufficient security in the form of a surety bond with the Clerk of the Court in the amount of **TWENTY-FIVE THOUSAND DOLLARS ($25,000.00)** for the payment of such costs and damages as may be incurred or suffered should it later be determined that Abel was wrongfully enjoined or restrained. This directive is without prejudice to either parties' right to seek an adjustment to the bond amount at the preliminary injunction hearing.

5. The requirements of this Order shall be **effective immediately** upon entry. However, should Morgan Stanley fail to comply with the posting of security with the Clerk, as required by paragraph 4, by 3 p.m., Wednesday, **January 31, 2018**, this restraining order shall no longer be in effect.

6. Although Morgan Stanley has served Abel with process in accordance with Rule 4, it must further serve him with a copy of its Amended Complaint. Morgan Stanley is also under a continuing obligation to notify and serve any papers subsequently filed with the Court on Abel until the preliminary injunction hearing or counsel for Abel makes an appearance on his behalf, whichever occurs first.

7. Abel must respond to the Emergency Motion, including all counter or opposing affidavits and a memorandum of legal authority on or before Tuesday, **January 30, 2018**.

8. Morgan Stanley may file a reply to Abel's response on or before 1 p.m., Friday, **February 2, 2018**.

9. This Order shall remain in full force and effect until 5 p.m. on Tuesday, **February 6, 2018**, unless extended or sooner dissolved.

10. A hearing as to whether this Temporary Restraining Order should be converted into a preliminary injunction will be held on Tuesday, **February 6, 2018**, at 1:30 p.m., in Courtroom 10B, Tenth Floor, United States Courthouse, 300 North Hogan Street, Jacksonville, Florida.[6] Counsel shall appear in person and telephonic appearances will not be permitted.[7]

**DONE AND ORDERED** at Jacksonville, Florida on January 23, 2018, at 4:40 p.m.

MARCIA MORALES HOWARD
United States District Judge

lc26
Copies to:

Counsel of Record
Pro Se Parties

---

[6] All persons entering the Courthouse must present photo identification to Court Security Officers. Although cell phones, laptop computers, and similar electronic devices generally are not permitted in the building, attorneys may bring those items with them upon presentation to Court Security Officers of a Florida Bar card (presentation of the Duval County Courthouse lawyer identification card will suffice) or Order of special admission pro hac vice. However, all cell phones must be turned off while in the courtroom.

[7] The hearing will be conducted in accordance with Local Rule 4.06, and Rule 65. The case does not appear to involve the exceptional situation wherein the Court will allow the parties to submit evidence at the hearing. See Local Rule 4.06(b). Thus, absent a motion and order directing otherwise, the hearing will be limited to the written submissions and arguments of counsel.

14